# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br><br>    v.<br><br>ELIAZER ROBLES-VELASCO,<br>  Defendant. | No.: 5:22-cr-00263-DSF<br><br>Order DENYING Defendant's Motion to Dismiss Indictment Under 8 U.S.C. § 1326(d) (Dkt. 39) |

## I. INTRODUCTION

Defendant Eliazer Robles-Velasco moves to dismiss the indictment. Dkt. 39 (Mot.). The government opposes. Dkt. 40 (Opp'n). For the following reasons, the Court DENIES the motion.

## II. BACKGROUND

Robles-Velasco is a Mexican national. Dkt. 39-2 Ex. A (Notice to Appear). In 1983, she was admitted to the United States as a lawful permanent resident. Id. In April 1999, Robles-Velasco was convicted of selling methamphetamine in violation of California Health & Safety Code § 11379. Id. As a result of this conviction, the United States Immigration and Naturalization Service (INS) initiated removal proceedings pursuant to section 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA). Id.

On December 22, 2003, Robles-Velasco signed a copy of the Notice to Appear in person, acknowledging that she had received the document and that she had been advised in both English and Spanish of the time and place of the hearing. Id. On the same day, Robles-

Velasco also signed a Notice of Rights and Request for Disposition Form. See Dkt. 41-1 Ex. 1 (Notice of Rights). This document was in Spanish. Id. The form explained that she was being detained because the INS believed she was in the country illegally. The form further explained that she had a right to a hearing where she could request to remain in the United States. Id. It also explained that she had the option of requesting to return to her country as soon as possible, without a hearing. Id. The form also advised her that she had the right to legal representation at the hearing, or to answer any question regarding her legal rights in the United States. Id. Robles-Velasco checked the box that stated "I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure." Id.

Despite waiving her right to a hearing before an immigration judge, Robles-Velasco had a hearing on January 6, 2004. See Dkt. 39-2 Ex. D (Order of the Immigration Judge). Robles-Velasco contends she was unable to understand the substance of the hearing—and her rights in connection with the hearing—because she could not understand the dialect and accent of the Spanish interpreter. See Dkt. 39-1 (Robles-Velasco Decl.) ¶ 4. Because she did not understand the interpreter, she did not understand that she was permanently prohibited from reentering the United States. Id. Robles-Velasco was removed to Mexico on or about the same day as the hearing before the immigration judge. See Dkt. 39-2 Ex. C (Warrant of Removal).

Robles-Velasco reentered the United States on February 21, 2004. Robles-Velasco Decl. ¶ 6. On or about May 28, 2019, Robles-Velasco was convicted of possession for sale of methamphetamine in violation of California Health & Safety Code § 11378. Dkt. 1 (Compl.) at 2.

In the present case, Robles-Velasco is charged with illegal reentry of a deported or removed person under 8 U.S.C. §§ 1326(a), (b)(2). She

moves to dismiss the indictment by challenging the validity of the underlying deportation order.

## III. LEGAL STANDARD

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant 'left the United States under order of exclusion, deportation, or removal, and then illegally reentered.'" United States v. Raya-Vaca, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting United States v. Barajas-Alvarado, 655 F.3d 1077, 1079 (9th Cir. 2011)), abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). A defendant charged with illegal reentry "has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004).

To succeed in collaterally attacking a removal order, a defendant must demonstrate that: (1) she "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the 'deportation proceeding violate[d] [her] due process rights' and that the violation caused prejudice.'" Raya-Vaca, 771 F.3d at 1201-02 (first alteration in original) (quoting United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994)). All three requirements are mandatory. United States v. Palomar-Santiago, 593 U.S. 321, 326-27 (2021).

## IV. DISCUSSION

A.  **Exhaustion**

Robles-Velasco argues that she has satisfied section 1326(d)(1) because any waiver of her rights to administrative remedies was not

3

knowing or intelligent. Mot. at 2-5. She contends that there was no "real world" ability to challenge the legal determination that she had been convicted of an aggravated felony or controlled substance violation because the forms provided to her did not indicate that she could contest the status of the offense. Id. at 3. And even if she had been aware of her rights, she was unable to exercise them because she was deported the same day as the immigration hearing. Id. at 3-4.

The government argues that Robles-Velasco was aware of her rights and validly waived those rights. Opp'n at 7. "For a waiver to be valid, the government must establish by 'clear and convincing evidence' that the wavier is 'considered and intelligent.'" United States v. Pallares-Galan, 359 F.3d 1088, 1097 (9th Cir. 2004) (citation omitted). "Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.'" Barker v. Wingo, 407 U.S. 514, 525-26 (1972) (citation omitted).

The evidence shows that Robles-Velasco waived her right to pursue administrative remedies. The Notice of Rights and Request for Disposition states "I admit that I am in the United States illegally . . . [and] I give up my right to a hearing before the Immigration Court." Robles-Velasco disputes that this waiver was made knowingly and intelligently and asserts that the government cannot prove otherwise by clear and convincing evidence. She argues that her waiver was not made knowingly and intelligently because the form she signed did not adequately inform her that she could contest the legal conclusion that her conviction was an aggravated felony. Mot. at 4. The government does not meaningfully rebut this argument. In order for Robles-Velasco to make a valid waiver, "[s]he had to know that [s]he could challenge [her] classification as an aggravated felon." United States v. Cazares-Rodriguez, No. 3:17-cr-00327-GPC-1, 2017 WL 2212031, at *5 (S.D. Cal. May 19, 2017).

The Notice of Rights form Robles-Velasco signed gave no indication that she could challenge her deportability by contesting the legal conclusion that she had committed an aggravated felony. The

4

form states: "You have a right to a hearing before the Immigration Court to determine whether you may remain in the United States." Notice of Rights. The Ninth Circuit has made clear that a noncitizen has to both appreciate the nature of what she is signing and understand the consequences flowing from any waiver. United States v. Ramos, 623 F.3d 672, 681-82 (9th Cir. 2010). Given that it is the government's burden to establish a valid waiver, the waiver is not considered and intelligent if the government cannot establish that the noncitizen "received adequate advisement of the consequences of h[er] waiver of appeal." Id. at 681 (citing Pallares-Galan, 359 F.3d at 1097). Even though Robles-Velasco waived her right to have her case heard before an immigration judge and conceded the fact that she was in the country illegally, it is not clear that she understood what she was giving up when she signed away her rights. This lack of understanding is supported by evidence that she was unaware that the order of deportation permanently prohibited her from entering the country. See Robles-Velasco Decl. ¶ 4. Indeed, only one month after her removal, Robles-Velasco reentered the country by going through border patrol and handing her green card to an agent as if she had not been removed. Id. ¶ 6.[1] She also updated her Mexican consular ID and attempted to renew her California Driver License. Id. ¶¶ 7, 8.

The government's reliance on United States v. Galicia-Gonzalez, 997 F.2d 602 (9th Cir. 1993) is misplaced. The Ninth Circuit addressed the application of Galicia-Gonzalez to circumstances factually similar to the present case and explicitly rejected the conclusion that Galicia-Gonzalez was controlling. United States v. Gomez, 757 F.3d 885, 894-95 (9th Cir. 2014). As the Ninth Circuit reasoned in Gomez, Galicia-Gonzalez is not controlling where the defendant was not represented by counsel at his removal proceeding, and where the defendant contested the validity of the waiver and alleged facts supporting its invalidity when prosecuted for illegal reentry. Id. The circuit stated that "when a defendant in a § 1326 prosecution contests the validity of his waiver . . .

---

[1] This conduct could suggest that she planned to reenter through deception, but the government has not established that.

the government's introduction of an official document signed by the defendant . . . is insufficient to meet the government's burden of proving a valid waiver." Id. at 895 (citing United States v. Reyes-Bonilla, 671 F.3d 1036, 1043-45 (9th Cir. 2012)).

The Court finds that the government has not met its burden here. See Gomez, 757 F.3d at 896. The government has presented no evidence—other than the signed form itself—that Robles-Velasco understood what rights she was waiving by signing the form. The Court concludes that Robles-Velasco has satisfied the first prong under section 1326(d)(1) because her waiver was not sufficiently "considered and intelligent."

## B.     Deprivation of Judicial Review

Robles-Velasco must also demonstrate that the "deportation proceedings at which the order was issued improperly deprived [her] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). In other words, Robles-Velasco must identify an obstacle that prevented her from obtaining judicial review of her deportation order. See United States v. Gonzalez-Villalobos, 724 F.3d 1125, 1133 (9th Cir. 2013). The Court finds that Robles-Velasco was deprived of the opportunity for meaningful judicial review. There is no evidence that the immigration judge informed Robles-Velasco of her right to appeal the deportation order. She contends that even if the immigration judge had informed her of that right, she did not understand it because the Spanish interpreter during the removal proceeding had a dialect and accent different from the dialect and accent with which she is familiar. For the purpose of this motion, the Court finds Robles-Velasco has satisfied the second prong under section 1326(d)(2).

## C.     Fundamental Unfairness

Robles-Velasco contends that her removal was "fundamentally unfair" because she was not removable as charged. Mot. at 6. The Ninth Circuit has held that a noncitizen defendant who was not removable as charged at her immigration proceeding categorically demonstrates that the removal proceeding was fundamentally unfair

and prejudicial. See United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006); see also United States v. Aguilera-Rios, 769 F.3d 626, 630 (9th Cir. 2014). Robles-Velasco argues that she was not removable as charged because her conviction under California Health & Safety Code § 11379(a) did not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). Mot. at 6.

To determine whether a state law conviction is an aggravated felony, a court "looks to the statute under which the defendant was convicted and compares its elements to the relevant definition of an aggravated felony under federal law." United States v. Valdavinos-Torres, 704 F.3d 679, 686 (9th Cir. 2012) (citing Taylor v. United States, 495 U.S. 575, 602 (1990)). The Supreme Court has stated that courts should initially employ a "categorical approach" to determine whether a state offense is an aggravated felony under the INA. See Mellouli v. Lynch, 575 U.S. 798, 805-06 (2015). Under this approach, a defendant's actual conduct is irrelevant; rather, "the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." Id. at 805 (quoting Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013)). "There is a categorical match 'only if the statute's elements are the same as, or narrower than, those of the generic [federal] offense.'" Lopez-Aguilar v. Barr, 948 F.3d 1143, 1147 (9th Cir. 2020) (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)).

But where statutes "contain several different crimes, each described separately," courts "may determine which particular offense the noncitizen was convicted of" by examining a limited set of documents underlying the conviction. Moncrieffe, 569 U.S. at 191; see also Shepard v. United States, 544 U.S. 13, 26 (2005) (listing permissible documents). The court then must determine whether the defendant's specific conviction can be categorized as an aggravated felony. Moncrieffe, 569 U.S. at 191. Here, it is undisputed that the modified categorical approach applies. See Mot. at 6; Opp'n at 10-11; see also United States v. Barragan, 871 F.3d 689, 714 (9th Cir. 2017) (finding that § 11379 was a divisible statute).

7

The Ninth Circuit has previously held that where a noncitizen's § 11379 conviction involves a substance within the coverage of the federal Controlled Substances Act (CSA), such as methamphetamine, it supports the noncitizen's removability. See United States v. Rodriguez-Gamboa, 972 F.3d 1148, 1154 n.5 (9th Cir. 2020). Referencing Rodriguez-Gamboa, the Ninth Circuit also held "as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under the federal [CSA]." Rosas-Felix v. Wilkinson, 836 F. App'x 610, 612 (9th Cir. 2021) (quoting Rodriguez-Gamboa, 972 F.3d at 1154 n.5).

Robles-Velasco argues that the Court should reach a result different from the circuit's in Rodriguez-Gamboa because the argument being presented here was not addressed in Rodriguez-Gamboa. See Mot. at 7 n.2. Robles-Velasco contends that § 11379(a) reaches more kinds of methamphetamine than the federal CSA because the state law includes "analogs" that the federal law does not. See id. at 7-12. For this reason, Robles-Velasco argues that the state statute is overbroad and is therefore not a categorical match to the federal statute.

The Court rejects Robles-Velasco's argument. The Ninth Circuit's holding in Rodriguez-Gamboa states unequivocally that "as a matter of law" the statutes are a categorical match, despite instances where a different text-based argument is presented. The Court therefore concludes that Rodriguez-Gamboa is binding here and Robles-Velasco's § 11379(a) conviction supports her removability. Cf. United States v. Cowan, No. 23-50007, 2024 WL 2717398, at *1 (9th Cir. May 28, 2024) (unpublished) ("We decline to read Rodriguez-Gamboa as . . . leaving open the possibility that [California's CSA statute] is not a categorical match [to the federal statute] due to other arguments. Rodriguez-Gamboa stated unequivocally that 'as a matter of law' the statutes were a categorical match and did not limit its holding to its

facts."); <u>United States v. Martinez</u>, No. 23-50011, 2024 WL 2717714, at *1 (9th Cir. May 28, 2024) (same).[2]

Because Robles-Velasco properly was charged as deportable based on her § 11379 conviction, she has failed to establish fundamental unfairness. Because she has failed to meet this prong under § 1325(d), the Court denies her motion to dismiss the indictment.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss.

IT IS SO ORDERED.

Date: July 1, 2024

*Dale S. Fischer*

Dale S. Fischer
United States District Judge

---

[2] The circuit articulated an exception to its holding for a defendant who "point[s] to his own case or other cases in which the state courts in fact d[o] apply the statute in the special (nongeneric) manner for which he argues," but Robles-Velasco has not stated that this exception applies to her case. <u>Rodriguez-Gamboa</u>, 972 F.3d at 1154 n.5.