# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br><br>                    v.<br><br><br>ELIAZER ROBLES-VELASCO,<br>    Defendant. | No.: 5:22-cr-00263-DSF<br><br>Order DENYING Defendant's<br>Motion to Dismiss (Dkt. 40) |

## I. INTRODUCTION

On December 7, 2021, the United States charged Defendant Eliazer Robles-Velasco with violating 8 U.S.C. § 1326.  See Dkt. 1 (Compl.).  She was indicted on November 16, 2022.  Dkt. 13 (Indictment).  Robles-Velasco now moves to dismiss the indictment under Federal Rule of Criminal Procedure 12(b) as time-barred.  Dkt. 40 (Mot.).  The government opposes.  Dkt. 42 (Opp'n).  For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

Robles-Velasco is a national and citizen of Mexico.  Dkt. 42-1 (Perera Decl.) ¶ 5.  She received permanent resident status in 1997.  Id. ¶ 13.  In January 2004, she was deported from the United States following a conviction for selling and furnishing methamphetamine.  Id. ¶¶ 5, 13.  On February 21, 2004, Robles-Velasco reentered the United States and presented her green card to border authorities.  Dkt. 40-1 (Robles-Velasco Decl.) ¶ 6.  Robles-Velasco updated her Mexican Consular ID with her California address

in 2009.  Id. ¶ 7.  In 2012, Robles-Velasco went to the California Department of Motor Vehicles (DMV) to renew her driver's license.  Id. ¶ 8.

Immigration authorities have access to various databases, including the National Law Enforcement Telecommunications System (NLETS), the Enforce Alien Removal Module (EARM or ENFORCE), and the Alien Criminal Response Information Management System (ACRIMe).  Perera Decl. ¶¶ 3, 5-8.  NLETS allows law enforcement authorities to search each state's DMV records but does not contain information about attempted license renewals.  Id. ¶ 7.  EARM contains all encounters between immigration authorities and legal and illegal immigrants in the United States.  Id. ¶ 6.  EARM and NLETS do not provide alerts or notices to the immigration authorities, and immigration authorities do not have a policy or procedure requiring officers to routinely search these databases.  Id. ¶¶ 9-10.  ACRIMe is a system used by ICE headquarters and personnel to receive and respond to immigration status inquiries made by other agencies.  Id. ¶ 3.  Once an individual is arrested and fingerprints are taken, those fingerprints will be added to the ACRIMe system.  Id.

On May 28, 2019, Robles-Velasco was convicted of violating California Health and Safety Code § 11378.  Perera Decl. ¶ 2.  On July 22, 2019, Deportation Officer Carlos Martinez learned of Robles-Velasco's 2019 conviction while Martinez was conducting a routine database check of the ACRIMe.  Id.  Based on this information, he took further investigative action to confirm Robles-Velasco's identity and status.  Id.  Deportation Officer Marco Perera took over the investigation in 2023.  Id. ¶ 4.  In reviewing Robles-Velasco's file, Perera discovered a conviction from 1999 for the sale or transportation of methamphetamine.  Id.  Perera also discovered that Robles-Velasco was removed from the United States in 2004.  Id.

The United States filed a complaint charging Robles-Velasco with violating 8 U.S.C. §§ 1326(a), (b)(2) on December 7, 2021.  Robles-Velasco was indicted on November 16, 2022.

### III. LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A pretrial motion is generally 'capable of determination' before trial if it involves questions of law rather than fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (citation omitted). "However, a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." Id. (quotation marks and citation omitted). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'"[1] United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (citing United States v. Smith, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989). When a court considers a Rule 12(b) motion to dismiss, "[t]he allegations of the indictment are presumed to be true." United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982).

### IV. DISCUSSION

Robles-Velasco moves to dismiss the indictment on the grounds that the government failed to file charges before the statute of limitations expired on Robles-Velasco's alleged violation of 8 U.S.C. § 1326(a), (b)(2). See Mot. at 1. Under Section 1326, it is illegal for persons who have previously been deported to (1) enter; (2) attempt to enter; or (3) be "found in" the United States, all without permission of the Attorney General. United States v. Gonzalez-Diaz, 630 F.3d 1239, 1242 (9th Cir. 2011). The statute of limitations for a violation of section 1326 is five years. 18 U.S.C. § 3282; United States v. Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 1995). The Ninth Circuit has determined that the statute of limitations begins to run

---

[1] The Advisory Committee Notes on Rule 12(b)(1) also indicate that "such matters as . . . statute of limitations" are "capable of determination without trial of the general issue." See Fed. R. Crim. P. 12 advisory committee's note to subdivision (b)(1) and (2).

3

when a previously deported person is "discovered and identified by the immigration authorities," which occurs when the government acquires knowledge of the person's illegal presence in the United States.  United States v. Zamudio, 787 F.3d 961, 966 (9th Cir. 2015) (quoting Hernandez, 189 F.3d at 791).

In this case, immigration authorities actually discovered and identified Robles-Velasco in 2019.  Perera Decl. ¶ 2.  However, Robles-Velasco contends that the statute of limitations began to run earlier based on a theory of constructive knowledge.  See Mot. at 4-6.  Specifically, Robles-Velasco argues that because she presented her green card to a border agent in 2004, updated the address on her Mexican Consular ID in 2009, and attempted to renew her California driver's license in 2012, the immigration authorities "had all the information and means . . . needed to find and arrest [her]."  Mot. at 3.

The Ninth Circuit has not held that the statute of limitations begins to run once immigration officials have constructive knowledge of the defendant's § 1326 violation.  To date, the Ninth Circuit has applied only an actual knowledge test.  See Zamudio, 787 F.3d at 966 (leaving open the question of whether a defendant is found once immigration authorities have constructive knowledge of his unlawful reentry).  Nevertheless, Robles-Velasco urges the Court to follow the constructive knowledge approach adopted by the Third, Eighth, and Eleventh Circuits.  Mot. at 4-6.  The Court declines to do so.  However, the Court's decision on this issue is not determinative, because even if the Court were to apply the out-of-circuit constructive knowledge standard, Robles-Velasco's statute of limitation argument would fail.

Under the constructive knowledge standard, the noncitizen is "found," and the statute of limitations begins to run, once immigration authorities possess "both the information and the means necessary" to determine the person's presence in the United States, her identity, and her status.  United States v. Gomez, 38 F.3d 1031, 1037 (8th Cir. 1994); accord United States v. Clarke, 312 F.3d 1343, 1348 (11th Cir. 2002); United States v. DiSantillo, 615 F.3d 128, 135 (3d Cir. 1980).

4

Robles-Velasco first argues that she was "found" when she reentered the United States and presented her green card to border agents on February 21, 2004.  Opp'n at 6.  However, the Ninth Circuit has held that "the government does not acquire knowledge—actual or constructive—of an alien's illegal presence in the United States upon being presented with an invalid travel document."  Zamudio, 787 F.3d at 966.  Because Robles-Velasco was deported in January 2004, her permanent resident status and green card were revoked.  Perera Decl. ¶ 13.  Therefore, her green card was an invalid travel document.  See id.  Robles-Velasco's successful use of an invalid document to reenter the United States "should not empower [her] subsequently to avoid prosecution on the theory that the government should have known [she] was entering the United States illegally."  Zamudio, 787 F.3d at 967.  Because the government had neither active nor constructive knowledge of Robles-Velasco's presence when she presented her green card to border authorities, the Court concludes she was not "found" in 2004 under either theory.

Robles-Velasco also argues that the immigration authorities had constructive knowledge of her presence after she attempted to renew her driver's license in 2012, because immigration authorities had the information and means to access her DMV records.  Mot. at 6.  However, the constructive knowledge standard requires that the immigration authorities themselves, and not merely some government entity, have the relevant information and means.  Compare Gomez, 38 F.3d at 1037-38 (holding that the defendant was "found" after providing *immigration authorities* with his fingerprints in an application for temporary resident status when the immigration authorities already had his fingerprints on file), with Clarke, 312 F.3d at 1348-49 (holding that immigration authorities did not "find" the defendant when he was arrested by *state authorities* because the immigration authorities were not notified of the arrest and had no pre-trial screening procedure in place to determine immigration status).  The DMV's possession of information that could be used to discover and identify Robles-Velasco in 2012 cannot be imputed to the immigration authorities, who do not realistically have the means to run searches of the California DMV database on its own accord.

5

The NLETS database, which allows immigration authorities to access DMV records regarding vehicle registration and driver's licenses, does not provide alerts or notices.  Perera Decl. ¶¶ 7-9.  To discover and identify Robles-Velasco when she attempted to renew her driver's license in 2012, immigration authorities would have had to affirmatively search through the NLETS database for her information.  Immigration authorities have no policy or procedure requiring or recommending such affirmative searches.  Perera Decl. ¶¶ 9-10.  Further, the only information the NLETS database contains on Robles-Velasco is that her last valid driver's license expired in 1999; the database contains no information about her renewal application.  Id. ¶¶ 7, 11.  Under these circumstances, immigration authorities could not have discovered Robles-Velasco's presence in the United States through "an exercise of typical law enforcement diligence."  See United States v. Valadez-Munoz, No. 17-cr-00702-RGK, 2018 WL 11230476, at *2 (C.D. Cal. Apr. 25, 2018) ("The Court does not expect immigration authorities to conduct searches in all accessible state databases for any person previously deported on the chance they might have illegally reentered the country.").  Because Robles-Velasco's attempt to renew her driver's license did not give immigration authorities the information and means necessary to detect her, the Court concludes Robles-Velasco was not "found" under either an actual or constructive knowledge standard in 2012.

The Court also rejects the argument that immigration authorities had the information and means needed to find Robles-Velasco in 2009 based on her updating her Mexican Consular ID with a San Bernardino address.  See Mot. at 1.  Robles-Velasco has not provided any evidence to suggest that the U.S. immigration authorities would have access to a Mexican database, or that Mexico would be aware that Robles-Velasco was no longer permitted residence in the United States.  Robles-Velasco also provides no caselaw to support a finding that information provided to a foreign government is sufficient to establish that the American government had actual or constructive knowledge of her violation.  The Court concludes that Robles-Velasco was not "found" when she updated her address with the Mexican consulate.

The Court concludes that the statute of limitations began to run on July 22, 2019, when immigration authorities discovered Robles-Velasco's presence in the United States during a routine check of the ACRIMe database.  Perera Decl. ¶ 2.  The Complaint was filed on December 7, 2021, and Robles-Velasco was indicted on November 16, 2022.  Because Robles-Velasco was charged within the five-year statute of limitations, the indictment is not time-barred.

## V. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the indictment is DENIED.

IT IS SO ORDERED.

Date: July 1, 2024

_____
Dale S. Fischer
United States District Judge

7